UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | Criminal No. 05-410-01 (CKK) |
| : | |
| WIDMAY DORVILIER, : | |
| : | |
| Defendant : | |
| : | |
| _____ : | |

## SENTENCING MEMORANDUM

Defendant Widmay Dorvilier submits the following memorandum to the court for its consideration in fashioning an appropriate sentence.

## BACKGROUND

**Prior to Arrest.** Widmay Dorvilier is a 27-year old Haitian national, who was influenced by his poverty and the environment of lawlessness which prevails in Haiti, to support himself and his children by the money he secured from ransom money paid by the families of persons whom he and his associates kidnapped. Ordinarily, such activity is exploited by the law enforcement community in Port au Prince by arresting the individuals involved and subjecting them to beatings in order to secure the information needed to obtain the proceeds of the kidnapping for themselves. As a part of this process, the families and friends of suspected criminals are terrorized, and sometimes murdered.

Between the years 2003 and 2005, Mr. Dorvilier involved himself in some illegal activity. In 2005, however, a particular event sent Mr. Dorvilier into a downward spiral. Mr. Dorvilier, his wife Berline and 7 or 8 friends were gathered in Mr. Dorvilier's house for an Easter celebration. Possibly as a result of the fact that a stolen vehicle was parked near Mr. Dorvilier's house, the police thought that Mr. Dorvilier had stolen the vehicle

and arrived at his house in two cars marked PNH (Police National Haiti). They entered the house wearing masks and carrying drawn weapons. The police opened fire upon and murdered all of the occupants of the house except Mr. Dorvilier, who escaped through an opening in the roof of his house. The police removed all of the bodies from the house, placed identifying bracelets on their wrists and dumped them in a hole. In order to obtain the body of his wife, Mr. Dorvilier paid some contacts to find his wife's body for him. Only then was Mr. Dorvilier able to bury his wife.

**Subsequent to Arrest.** Mr. Dorvilier is in contact with his son Witchmy's godmother. She has told him that some of Mr. Dorvilier's former friends and associates believe that he is providing information about their activities to the FBI. Mr. Dorvilier's father owns a house which he rents. After Mr. Dorvilier's arrest, some of these persons have been shooting into Mr. Dorvilier's father house. This caused the renters to move out. Mr. Dorvilier's father has lost the income from the home and is too frightened to leave his house. Notwithstanding the fact that the shootings have been reported on local radio, police have taken no interest in these events.

On August 16, 2006, Haitian police went to Mr. Dorvilier's sister Nicole Dorvilier's house and place of business looking for guns and money they thought Mr. Dorvilier had left with his family in Haiti. Mr. Dorvilier's brother James Dorvilier was there at the time. Also, Ketlene, the mother of one of Mr. Dorvilier's children who had visited Mr. Dorvilier when he was in jail in Haiti, was there to visit and to get information about Mr. Dorvilier. Police beat James Dorvilier when they found him in the house. Ketlene ran away from the house, leaving her baby. The baby was injured, taken to the hospital, where he died 2-3 days later. The police arrested James Dorvilier, who

has been detained in jail in Port au Prince since that day, but has never been charged with an offense.

**After Mr. Dorvilier is Returned to Haiti.**  Once Mr. Dorvilier has completed the prison sentence imposed by this court, he will be deported to Haiti, where he will probably be killed.  His only chance of survival is to gather his family and leave Port au Prince, if he can lawfully gather the resources to do so.  Everyone, including law-abiding persons, are deathly afraid of the police.  Their activities are as lawless, or more so, than "criminals" like Mr. Dorvilier.  Mr. Dorvilier never physically harmed a person during any of his crimes, unlike the police, who murder at will.  He has, however, caused emotional and psychological damage to Mr. Dorvilier's victims by abducting a child, and threatening to kill him.  Mr. Dorvilier states that while engaged in illegal activity in Haiti, he thought only about his needs, and did not consider the effect he was having on his victims.  Being in jail in the United States in a safe environment, has afforded Mr. Dorvilier the time and space to think about how wrong his actions were.

**The Sentence.**  The government recommends a sentence between 255 and 262 months, which reflects a 6.1 year to 8.7 year downward sentencing departure from the government's estimate of Mr. Dorvilier's exposure.  However, Mr. Dorvlier submits that this reduction is insufficient in light of Mr. Dorvilier's extensive cooperation.

1.  Mr. Dorvilier was arrested in Haiti on October 14, 2005.  After being beaten by guards in the Port au Prince jail (which is apparently a routine practice), on November 9, Mr. Dorvilier was interviewed by the FBI in Port au Prince.  His statement, which included taking responsibility for the kidnapping and providing minute details of the crime was recorded by the FBI in a 6-1/2-page single spaced FBI form 302.  As a part of

this debriefing, agents took Dorvilier into the street in an attempt to locate other members of the kidnapping group; he identified members from photo arrays, and agreed to cooperate fully against other members, including testimony, if necessary.

2. Upon his arrival in the District of Columbia, after advice of counsel, Mr. Dorvilier agreed to further cooperate with the government. Mr. Dorvilier participated in two extensive debriefings prior to entering a guilty plea, and 5 follow-up debriefings. Mr. Dorvilier's contribution directly led to the indictment of co-conspirator Fanel Joseph, and the identification of Conspirator J, as well as other, minor players in the kidnapping. Although diligent efforts by the FBI to locate Conspirator J did not result in his arrest, this failure is not attributable to Mr. Dorvilier, who stood ready to testify against him in the event he was brought to trial.

In light of Mr. Dorvilier's extensive cooperation, it is his request that the court depart downward 7 levels, from level 38 (235-293 months) to level 31 (108-135 months), which with the additional seven years for the 924(c) violation would result in an aggregate amount of 192-219 months (108-135 months plus 84 months = 192-219 months.)

Respectfully submitted,

/s/ Joanne M. Vasco